UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.  3:02cr72(AWT) |
| | : | |
| v. | : | |
| | : | |
| **NEGUS THOMAS** | : | August 3, 2006 |

**GOVERNMENT'S REPLY TO THE DEFENDANT'S *CROSBY* BRIEF**

On July 17, 2006, the defendant Negus Thomas filed a brief requesting that the court impose a new sentence in light of the holding of the United States Supreme Court in *United States  v. Booker*, 125 S. Ct. 738 (2005).  The Government believes that the factors cited by the defendant do not support the imposition of a nontrivially different sentence and requests that the Court affirm the original sentence imposed in this case.

## I.  Procedural History

On July 9, 2002, a federal grand jury returned a Superseding Indictment that charged the defendants Negus Thomas and Jerkeno Wallace -- and eight others -- with conspiring to distribute 50 grams or more of cocaine base ("crack").  The grand jury also charged various defendants with distributing smaller quantities of crack cocaine on diverse dates during the life of the conspiracy.  With the exception of Thomas and Wallace, all of the defendants pleaded guilty.  In addition to the drug offenses, Thomas and Wallace were charged with drive-by shooting (18 U.S.C. § 36) and use of a firearm during and in relation to both a crime

of violence and a drug trafficking offense (18 U.S.C. §§ 924(c) and 924(j)) and conspiracy (18 U.S.C. § 924(o)).

More specifically, the United States charged Thomas, among others, in Counts One, Four and Ten with the following narcotics offenses:

- Count One of the Superseding Indictment charged that from May 16, 2001, until about March 11, 2002, Negus Thomas, Jerkeno Wallace and eight others conspired to possess with intent to distribute and did distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) and 846;

- Count Four charged that on February 11, 2002, Negus Thomas aided and abetted Kimberly Cruze in the distribution of a quantity of cocaine base in violation of 21 U.S.C. § 841(b)(1)(C) and 18 U.S.C. § 2;

- Count Ten charged that from about February 5, 2002, until about March 11, 2002, Negus Thomas and Kimberly Cruze operated a drug distribution outlet from their residence on the first floor of 81-83 Edgewood Street, Hartford, Connecticut, in violation of 21 U.S.C. § 856(a)(2).

The United States also charged Thomas and Wallace with various crimes relative to the murder of Gil Torres:

- Count Eleven charged that on May 16, 2001, Thomas and Wallace conspired to use a firearm in furtherance of a drug trafficking crime (the conspiracy charged in Count One) and/or a crime of violence (the drive-by shooting charged in Count Twelve) in violation of 18 U.S.C. § 924(o);

- Count Twelve charged that on May 16, 2001, Thomas and Wallace, aided and abetted by each other, in furtherance of a major drug offense (the conspiracy charged in Count One), with malice aforethought, and with premeditation, and with intent to intimidate, injure, and maim, fired a weapon into a group of persons, and in so doing, intentionally committed a first degree murder in violation of 18 U.S.C. §§ 36(b)(2)(A), 1111(a) and 2;

- Count Thirteen charged that on May 16, 2001, Thomas and

    Wallace, aided and abetted by one another, during and in relation to a drug trafficking crime (the conspiracy charged in Count One), discharged a firearm and, in so doing, murdered Gil Torres in the first degree, in violation of 18 U.S.C. §§ 924(j)(1), 924(c)(1)(A)(iii) and 2; and

- Count Fourteen charged that on May 16, 2001, Thomas and Wallace, aided and abetted by one another, during and in relation to a crime of violence (the drive-by shooting charged in Count Twelve), discharged a firearm that resulted in the first degree murder of Gil Torres, again in violation of 18 U.S.C. §§ 924(j)(1), 924(c)(1)(A)(iii) and 2.[1]

On May 13, 2003, the defendant Thomas was convicted on Counts One, Four, Ten and Twelve through Fourteen. Judgment entered as to both defendants on December 15, 2003, following a sentencing hearing conducted December 12, 2003. The defendant Thomas filed a timely notice of appeal. On April 27, 2006, the United States Court of Appeals for the Second Circuit ordered a limited remand in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).

On June 9, 2006, the Court ordered the parties to submit briefs on this issue. The defendant filed his brief or about July 17, 2006.

---

[1] The Court has invited the parties to opine whether Count Thirteen or Count Fourteen should be dismissed pursuant to the Second Circuit's ruling. The Government suggests that because the firearm clearly was used to murder Gil Torres, as charged in Count Fourteen, the Court should vacate the defendants' convictions on Count Thirteen, which concerns the use of the firearm in connection with drug trafficking. While the firearm was held "at the ready" in the event the defendants needed to protect their drug turf, such carriage and usage is not as direct at the carriage and usage proven in Count Fourteen.

## II.   Limited Remands in Light of *Booker* and *Crosby*

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory."  *Booker*, 125 S. Ct. at 756.  This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to appellate review for "reasonableness."  *Id.* at 769.

The Court of Appeals for the Second Circuit has summarized the impact of *Booker* as follows:

> First, the Guidelines are no longer mandatory.  Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). *Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,* or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. *Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible*

>   *departure authority, or (ii) to impose a non-Guidelines sentence.*  Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*United States v. Crosby*, 397 F.3d at 113 (emphasis added).  When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."  *Id.*  Both the Supreme Court and the Court of Appeals expect "sentencing judges faithfully to discharge their statutory obligation to 'consider' the Guidelines and all of the other factors listed in section 3553(a), . . . and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice."  *Id.*

### III. Discussion

The Government agrees that the Court should consider all of the factors cited by the defendant, especially given that he is serving a life sentence, but believes that such consideration should not result in the imposition of a different sentence, especially since the Court was aware of and consider the sentencing factors listed in 18 U.S.C. § 3553.  *See* 12/12/03 Sentencing Transcript ("Tr. at 55-56").

On May 16, 2001, at approximately 3:00 p.m., on Farmington Avenue in Hartford, Connecticut, near the historic Mark Twain House and around the corner from the Hartford Public High School

which was letting out for the day, Negus Thomas and Jerkeno Wallace pulled abreast of a Honda Prelude that was carrying three men who had just robbed Thomas of his livelihood -- crack cocaine.  Thomas and Wallace had followed the three men across town and, as their quarry was stuck in traffic, they exacted retribution for the intrusion on their drug business, firing several shots into the vehicle.  One of those slugs hit Gil Torres in the neck, paralyzing him immediately and ultimately killing him.  A jury convicted Thomas and Wallace of multiple murder, firearms, and drug-related charges, finding specifically that each acted with actual malice in the murder of Torres.

The defendant now argues that this Court should reconsider its sentence because of the disparity in punishment between the federal system and the state system as it relates to crack cocaine distribution and murder.  The defendant also argues that a life sentence ignores the goal of rehabilitation.  These arguments are unavailing, however.

First, as the Government noted at the defendant's sentencing hearing, while application of the crack cocaine Guidelines in this case was undeniably harsh, the defendant's sentence had to be a reflection of an even more serious offense:  the first-degree murder of Gil Torres; that is, the calculated, cold blooded decision to fire several shots into a car carrying three people in the middle of a crowded street.  The jury determined

that the defendants actions were premeditated and inspired by malice. Tr. at 51.

Accordingly, the Government acknowledges that if the defendant was sentenced to life imprisonment solely because of his convictions on Counts One, Four and Ten (the drug trafficking offense), it is likely that a re-sentencing pursuant to the teachings of *Crosby* would yield a nontrivially different sentence.

But that is not the case. Mr. Thomas stands convicted of first-degree murder. His life[2] sentence reflects the gravity of the crime. His lack of remorse, as exhibited throughout the proceedings before the Court, served to solidify that he is an offender who needs to be isolated from society. The need for deterrence – both generally and specifically – significantly influence the Court's sentence:

> I sat through trial. . . . In your case, I have concluded that I must be most aware of the need to protect society and the need for deterrence of others who may be tempted to act as you have acted. Your counsel has filed a motion for a downward departure [from life], and I do commend him for all the hard work he put into it. But this is a case where it really doesn't matter to me whether there is a ground for a downward departure or not . . . . this case seems to me

---

[2] The defendant's argument that there is an unwarranted disparity between the federal system's treatment of this murder and the result that would have obtained in the state system is misplaced. In Connecticut, the first degree murder of Gil Torres would have been punished by 60 years of imprisonment, see C.G.S. § 53a-35b), which while different from life, hardly can be characterized as an unwarranted disparity.

7

> to be the most inappropriate one for me to exercise my discretion to depart downward. . . . I think it's important when we look at the need to deter others from acting as you have acted that you were selling drugs, you weren't selling donuts, cookies, something like that. And in those kinds of circumstances, people have to know that when they get robbed and they can't call the police, they can't go out and shoot the person who robbed them. So, for those reasons and others, I choose not to exercise my discretion to depart in this case even if there is a basis for a downward departure. I have several other things I could say as to why I choose not to exercise my discretion, but I don't think you need to have those things heaped on you today. The sentence I impose will be enough punishment.

Tr. at 56-58.

In electing to not exercise its discretion and depart downward from a life sentence, the Court's sentencing remarks demonstrate that even if the Guidelines were advisory and not compulsory in December 2003, the Court would have sentenced Mr. Thomas to life imprisonment as opposed to a nontrivially different sentence.

The defendant also argues that the goal of rehabilitation, 18 U.S.C. § 3553(a)(2)(D), cannot be satisfied where he has been sentenced to life without parole. But this goal – "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" – is one of several competing interests and, as such, must be balanced against other equally important considerations, including: the nature of the offense (first-degree murder); the circumstances of the offense (premeditated

murder stemming from an intrusion onto a major crack cocaine distribution operation); the need to reflect the seriousness of the offense, to promote respect for the law; to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.

### IV.  Conclusion

A life sentence for the first-degree murder of Gil Torres was – and remains – an appropriate disposition.  Given the Court's comments at the defendant's sentencing hearing on December 12, 2003, it does not appear that this sentence was imposed as a result of a mandatory guidelines regime.  Instead, the record reflects that the defendant's sentence was the product of careful reflection and deliberation, and based upon sentencing factors contained in section 3553.  The Government respectfully requests that the Court reaffirm the sentence previously imposed in this case and, moreover, vacate the conviction under Count Thirteen.

                              Respectfully submitted,

                              KEVIN J. O'CONNOR
                              UNITED STATES ATTORNEY


                                  /s/
                              MICHAEL J. GUSTAFSON
                              ASSISTANT U.S. ATTORNEY
                              Federal Bar No. CT01503
                              157 Church Street
                              New Haven, CT  06510
                              Tel.: (203) 821-3700

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 3rd day of August, 2006, a copy of the foregoing was mailed to:

David Wenc, Esq.
Wenc Law Offices
44 Main Street
Windsor Locks, CT 06096

                                                                    _____/s/_____
                                                                     Michael J. Gustafson
                                                                     Assistant U.S. Attorney